IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM WILLIAMS, as Administrator of
the Estate of Candace Williams, deceased,
and WILLIAM WILLIAMS, a resident of Ohio,

    Plaintiffs,

v.                                        Civil Action No. 5:08CV137
                                                                 (STAMP)
GREAT WEST CASUALTY COMPANY,
a Nebraska corporation,
domiciled in the State of Nebraska and
JOHN DOES 1, 2, and 3, who participated
in the spoliation of evidence vital to
the plaintiff's ability to prevail in a
civil action,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING THE PLAINTIFFS' MOTION TO CERTIFY QUESTIONS
TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA;
GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
DENYING AS MOOT THE DEFENDANT'S MOTIONS IN LIMINE; AND
DISMISSING WITHOUT PREJUDICE DEFENDANTS JOHN DOES 1, 2, AND 3**

I. Procedural History

The plaintiffs, William Williams, as administrator of the Estate of Candace K. Williams, and William Williams, individually, filed the above-styled civil action alleging negligent spoliation of evidence and intentional spoliation of evidence against defendants Great West Casualty Company ("defendant") and John Does 1, 2, and 3.[1]

---

[1]The plaintiffs have not moved to amend their complaint to identify John Does 1, 2, and 3. Federal Rule of Civil Procedure 4(m) requires dismissal if the "defendant is not served within 120 days after a complaint is filed." Because the plaintiffs have not yet named these parties in an amended complaint or served these

On October 13, 2009, the plaintiffs filed a motion to certify questions to the Supreme Court of Appeals of West Virginia, to which the defendant responded and the plaintiffs replied. Thereafter, on November 12, 2009, the defendant filed a motion for summary judgment. The defendant's motion for summary judgment has now been fully briefed by the parties and is ripe for review. After considering the parties' briefings and the applicable law, this Court finds that the plaintiffs' motion to certify questions to the Supreme Court of Appeals of West Virginia must be denied. Further, the defendant's motion for summary judgment must be granted. Additionally, because the defendants' motion for summary judgment will be granted, the defendant's motions in limine which are also currently pending before this Court, will be denied as moot. Finally, John Does 1, 2, and 3 are dismissed without prejudice because the plaintiffs did not file an amended complaint identifying those defendants.[2]

---

unnamed defendants with a summons within 120 days or moved this Court to extend the period in which to name the defendants, it is ORDERED that defendants John Does 1, 2, and 3 be DISMISSED WITHOUT PREJUDICE as defendants in this action.

[2]By letter dated December 10, 2009, this Court advised the parties of tentative rulings on the plaintiffs' motion to certify, the defendant's motion for summary judgment, the defendant's motions in limine. The letter also stated this Court's ruling to dismiss without prejudice John Does 1, 2, and 3. This memorandum opinion and order sets forth those ruling in more detail.

## II. Facts

On September 3, 2006, Candace Williams died while driving a semi-tractor carrying gasoline on Route 18 in Tyler County, West Virginia. The semi-tractor, a 2000 Freightliner, rolled over and exploded, killing Candace and a passenger. John Harris ("Harris") owned the semi-tractor and leased it to Lewis Transport, Inc., Candace's employer. The defendant provided property insurance on the semi-tractor, but did not provide cargo or liability insurance. On the day of the accident, a tow truck towed the semi-tractor to Middle Creek Garage.

The defendant learned of the accident from Lewis Transport at 9:06 p.m. on September 3, 2006. On September 4, 2006, Terry Irvine ("Irvine"), an independent adjuster hired by Northland Insurance Company, the liability insurer, stated that he visited the site of the accident, talked to the insured, the state police, and two witnesses. Irvine also photographed the remains of the semi-tractor. The next day, Irvine also photographed the semi-tractor at Middle Creek Garage.

Darla Hartung-Starns ("Hartung-Starns"), an employee of the defendant, contacted Lewis Transport on September 5, 2006. Lewis Transport agreed to fax the tow bill from Middle Creek Garage to the defendant. Hartung-Starns also contacted Harris and Middle Creek Garage to inform them that the defendant would inspect the semi-tractor.

Also on September 5, 2006, Terry Phelps ("Phelps"), an employee of the defendant, called Harris to inform him that the defendant would inspect the semi-tractor the next morning. On September 6, 2006, Phelps inspected the semi-tractor at Middle Creek Garage.

Irvine issued a report to Northland Insurance Company on September 8, 2006. On the same day, Phelps asked Harris if he would like to keep the semi-tractor. Harris stated that he did not wish to keep the semi-tractor. Phelps then authorized Middle Creek Garage to destroy the semi-tractor. The semi-tractor was destroyed on September 12, 2006.

On December 31, 2007, the plaintiffs retained counsel. The plaintiffs filed this action in this Court on August 29, 2008.

### III. Applicable Law

Under Federal Rule of Civil Procedure ("Rule") 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."

Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

A. Motion to Certify Questions

West Virginia has enacted the Uniform Certification of Questions of Law Act, W. Va. Code § 51-1A-1 et al. West Virginia Code § 51-1A-3 provides:

> The Supreme Court of Appeals of West Virginia may answer a question of law certified to it by any court of the United States . . . if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision, or statute of this state.

W. Va. Code § 51-1A-3 (2009). The West Virginia Supreme Court of Appeals has recognized that the provisions of the Uniform Certification of Questions of Law Act are not mandatory. Morningstar v. Black & Decker Mfg. Co., 253 S.E.2d 666, 668 (W. Va. 1979). Thus, certification is discretionary both for the certifying court and for the court requested to answer the certified question. The Supreme Court of Appeals has stated that "[i]t is rather apparent that where our State's substantive law is

clear, there is no need to obtain certification under West Virginia Code, 51-1A-1, et seq." Id. at 669.

The first question the plaintiffs propose for certification is:

> In an action for third party negligent spoliation where a defendant — in this case, a knowledgeable and sophisticated insurer for a party which is itself adverse or potentially adverse to the Plaintiff in the present case with respect to the accident giving rise to the spoliated evidence — assumes control and exercises exclusive authority over the vehicle/evidence at issue, and very rapidly thereafter destroys that vehicle/evidence prior to the time that the plaintiff reasonably could have developed evidence in support of his claim or potential claim, and prior to the completion of related investigations by official agencies, may said plaintiff, as an exception to the ordinary rule articulated in Mace v. Ford et al., 221 W.Va. 198, 653 S.E.2d 660 (2007) prove the spoliating third party's "actual knowledge of a potential claim" by demonstrating that a reasonable insurer during its own investigation of a claim pursuant to the Unfair Trade Practices Act, would, per se, have actual knowledge of the plaintiff's claim or potential claim? Or, stated another way, does an insurance company's regulatory duties under the Unfair Trade Practices Act satisfy or supersede the requirements of Mace regarding the element of "actual knowledge of a claim or potential claim" with respect to claims or potential claims which the third party spoliator itself had a statutory duty to investigate/evaluate and for which the third party spoliator may have had applicable insurance?

This question involves the issue of actual knowledge in third party negligent spoliation cases. The plaintiffs believe that the facts in the present case can be distinguished from the facts in Mace v. Ford Motor Company, 653 S.E.2d 660 (W. Va. 2007) (per curiam), a West Virginia negligent spoliation case. In Mace, Liberty Mutual Insurance Company insured a woman whose Ford

7

Explorer overturned in a one vehicle accident. Id. at 662. Over the decade prior to the accident, Liberty Mutual had paid out approximately $7 million in claims involving approximately five hundred Ford Explorer accidents where the vehicles had overturned. Id. at 663. Liberty Mutual also had filed a subrogation suit alleging similar claims as the plaintiffs'. Id. After the accident, Liberty Mutual paid the plaintiffs the Explorer's value. Id. at 662. The plaintiffs then provided ownership of the vehicle to Liberty Mutual. Id. Within two months of the accident, Liberty Mutual had sold the Explorer to a salvage company. Id. Approximately two years after the accident, the plaintiffs sued Liberty Mutual for negligent spoliation. Id.

The circuit court in Mace granted summary judgment to Liberty Mutual. Id. at 663. Despite the existence of five hundred prior claims and Liberty Mutual's subrogation suit, the court found that the plaintiffs did not have actual knowledge of a pending or potential civil action at the time of the spoliation. Id. at 665. The court found it significant that the plaintiffs had not informed Liberty Mutual of their intention to sue Ford Motor Company and the dealer. Id. The Supreme Court of Appeals stated that West Virginia law is clear that actual knowledge is required. Id. at 666. In West Virginia, actual knowledge is clear and direct, while constructive knowledge is knowledge which someone should have known after using reasonable care and diligence. Id. Constructive

8

knowledge is not sufficient for the tort of negligent spoliation. Id. The court believed that Liberty Mutual did not have a duty to exercise reasonable care or diligence and examine all the facts and circumstances regarding the claim before destroying the Explorer. Id. at 667.

The Supreme Court of Appeals has already answered the plaintiffs' first question. However, the plaintiffs believe that the facts of the present case necessitate certification. This Court now turns to the facts the plaintiffs present in the question for certification. First, the plaintiffs state that the defendant is "a knowledgeable and sophisticated insurer." As Liberty Mutual is also a knowledgeable and sophisticated insurer, this fact does not change the scenario presented in Mace.

Next, the plaintiffs state that the defendant assumed control and exercised exclusive authority over the vehicle. This too, is typical in this context and Liberty Mutual acted in the same manner in Mace by taking title to the Explorer. Additionally, the plaintiffs state in the question that the defendant very rapidly destroyed the vehicle after obtaining title and that the plaintiffs did not have time to reasonably develop a potential claim prior to the destruction of the vehicle. In this case, the semi-tractor was destroyed in nine days. In Mace, the Explorer was destroyed after two months.

Finally, the plaintiffs state that West Virginia law is unclear on whether an insurance company's regulatory duties under the West Virginia Unfair Trade Practices Act ("UTPA") create actual knowledge of a potential claim. The Mace court did not impose a legal duty on Liberty Mutual despite the existence of the UTPA in 2007, when the court decided the case.

The plaintiffs here do not seek a clarification of an ambiguity, nor do they attempt to fill a void in West Virginia law. Rather, the plaintiffs are trying to expand the law of negligent spoliation by a third party. This Court finds that West Virginia law is quite clear: "a third party must have had actual knowledge of the pending or potential litigation." Mace, 653 S.E.2d at 666 (quoting Hannah v. Heeter, 584 S.E.2d 560, 570 (W. Va. 2003)). Actual knowledge, as mentioned above, is "'direct and clear knowledge,'" and actual notice is "'notice given directly to, or received personally by, a party.'" Id. (quoting Black's Law Dictionary, 888, 1090 (8th Ed. 2004)). Because West Virginia substantive law is clear on this question, there is no need to obtain certification.

Second, the plaintiffs propose for certification:

In light of the fact that an insurance company has a regulatory duty to diligently conduct a "thorough, fair and objective investigation" of a claim and to establish procedures for such investigation pursuant to W. Va. CSR §114-14-6, where an insurance company in the course of its investigation of a claim takes control of and exercises exclusive authority over the evidence at issue, does said conduct constitute "special circumstances,"

10

that create a duty on the part of the insurance company
to preserve said evidence? See Syllabus Point 8, Hannah
v. Heeter, 213 W.Va. 704, 584 S.E.2d 560 (2003).

This question proposed by the plaintiffs is not properly certifiable. <u>Hannah</u> states that one of the elements for negligent spoliation is that there must be "a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances." <u>Hannah</u>, 584 S.E.2d at 714. As the plaintiffs state in the proposed question, W. Va. C.S.R. § 114-14-6 requires that insurance companies conduct thorough, fair and objective investigations of claims. This state rule does not create a duty to keep a vehicle while conducting an investigation. If a duty to preserve evidence existed, it would arise under the state rule addressing the duty to investigate.

Third, the plaintiffs ask this Court to certify to the Supreme Court of Appeals of West Virginia:

> If the answer to the previous question is "yes," does
> that duty to preserve evidence include the duty, at the
> very least, to give notice of the planned impending
> destruction of the evidence to the affected "claimants,"
> as that term is defined under Unfair Trade Practices Act,
> who are reasonably known to the insurance company
> providing those claimants with an opportunity to take
> possession of or control over the evidence at issue prior
> to its destruction?

West Virginia substantive law is also clear on this question. West Virginia Code § 33-11-4A(a) provides that "[a] third-party claimant may not bring a private cause of action . . . against any

11

person for an unfair claims settlement practice. A third-party claimant's sole remedy against a person for an unfair claims settlement practice . . . is the filing of an administrative complaint." Here, the plaintiff, William Williams, and his wife, Candace, were not insureds of the defendant, making them third parties in relation to the insurance policy. Therefore, the defendant had no duty to notify the plaintiffs about the destruction of the semi-tractor.

Finally, the plaintiffs ask this Court to certify the following question:

> Where there are multiple insurance carriers, each subject to the Unfair Trade Practices Act, each of which provides a layer of insurance coverage for the same vehicle and/or same insured evidence at issue (e.g., separate physical damage and liability carriers, excess insurance carriers, etc.), and where one of the multiple insurance carriers has taken control of and exercises exclusive authority over the vehicle and/or other evidence at issue, does that insurer with possession and control owe a duty to those other insurance carriers who also have coverage, as well as their insureds, to provide said carriers and insureds with notice of its intent to destroy the insured vehicle and/or other insured evidence prior to its destruction so as to allow these other insurance carriers to meet their regulatory duties under the Unfair Trade Practices Act?

This question involves notice to other insurers to allow those insurers to comply with the UTPA. Because the plaintiffs are not providers of insurance, they lack standing to certify this question. Even assuming that the plaintiffs have standing, this question is still not properly certifiable. The plaintiffs are suing the defendant for negligent spoliation and intentional

spoliation.  Neither of these state law torts contain an element requiring notice be given to individuals or entities before destruction of evidence.  The question, therefore, is not determinative of any issues in this case.

There is no need to obtain certification for these questions as they are either not determinative of any issues in the case or because West Virginia substantive law is clear.  Accordingly, the plaintiffs' motion to certify questions to the Supreme Court of Appeals of West Virginia is denied.

B.   Negligent Spoliation of Evidence

In West Virginia, to establish a prima facie case of negligent spoliation of evidence by a third party, a plaintiff must prove the following elements:

> (1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or potential civil action; (3) a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; and (6) damages.

Syl. Pt. 2, Mace v. Ford Motor Co., 653 S.E.2d 660 (W. Va. 2007) (per curiam).

The plaintiffs allege that the defendant committed the tort of negligent spoliation of evidence by a third party when it authorized the destruction of the semi-tractor.  The defendant argues that the plaintiffs have not shown a genuine issue of

13

material fact: (1) that no pending or potential civil action existed at the time of the alleged negligent spoliation; (2) that the defendant did not have actual knowledge of any pending or potential civil action at the time of the alleged negligent spoliation; and (3) that the defendant did not have a duty to preserve the semi-tractor.

Here, the plaintiffs cannot show that the defendant committed the tort of negligent spoliation. First, the plaintiffs cannot show the existence of a pending or potential law suit at the time of the alleged negligent spoliation. An action is pending "from its inception until rendition of final judgment." Id. at 664 (citing Black's Law Dictionary 1021 (5th ed. 1979)). Because an action was not "pending" at the time of the alleged spoliation, this Court will turn to whether there was "potential" for an action. The Supreme Court of Appeals defined "potential" as "[e]xisting in possibility but not in act. Naturally and probably expected to come into existence at some future time, though not now existing." Id. (citing Black's Law Dictionary 1052 (5th ed. 1979)). The record does not show that a potential law suit existed. Terry Irvine, the independent claims adjustor working for Northland Insurance Company, did not believe that the plaintiffs had any pending or potential claims from the accident after inspecting the accident. Further, in an answer to an interrogatory regarding a potential suit, the plaintiffs believe that certain

facts, including that the semi-tractor model at issue "was known" to have design defects, the carbon monoxide level in Candace's body was high, and the semi-tractor was destroyed in a short period of time, served to indicate to the defendant that the plaintiffs had a potential civil action. Like in Mace, the vehicle here had an alleged design defect that was previously discovered. That does not mean that there was a potential civil action. Id. at 667. Nothing in the record objectively demonstrates that the plaintiffs, before the semi-tractor was destroyed, "were likely to pursue a claim against [the defendant] in the future." Id. at 665.

Even if this Court concluded that there was potential for an action, the defendant had no actual notice of any pending or potential civil action at the time it made the decision to destroy the vehicle. The plaintiffs contend in an answer to an interrogatory regarding the actual knowledge element of the tort that John Harris, the owner of the semi-tractor, had several conversations with the defendant regarding the damage to the semi-tractor. As a result of these conversations, the plaintiffs believe the defendant "would have been or should have been, aware of the potential for civil litigation." As discussed above, constructive knowledge is not sufficient. Id. at 666. Actual knowledge is direct and clear. In his deposition, William Williams admitted that he had never contacted anybody at Great West for any reason from the time of the accident through the time of the

deposition. He also admitted that other than through his attorneys, who were retained on December 31, 2007, he had never requested or directed anyone to make contact with the defendant. In order to establish a prima facie case for the tort of negligent spoliation, the plaintiff may not impute knowledge to the defendant of what it should have known. Id. William Williams' deposition makes clear that the defendant did not have actual knowledge of a pending or potential civil action.

Finally, the defendant had no duty to preserve the semi-tractor in this case. The plaintiffs contend that the insurance policy created a duty, but this insurance policy did not cover liability. As the Great West insurance policy related to property, not liability, no need to preserve the evidence was ever at issue. Additionally, as third parties to the contract, no duty ran from the defendant to the plaintiffs under the contract.

No statute or administrative rule creates a duty to preserve the semi-tractor. Federal Rule of Civil Procedure 11 does not discuss the preservation of evidence or any duty to preserve evidence. Therefore, it is not applicable in the present case. Likewise, the cases the plaintiffs presented to this Court do not set forth a requirement to preserve evidence. Hannah created the tort of negligent spoliation in West Virginia, but does not impose a duty to preserve evidence. Hannah, 584 S.E.2d at 714 (providing where a duty to preserve evidence might arise, not imposing a duty

to preserve evidence). Tracy v. Cottrell, 524 S.E.2d 879, 887 (W. Va. 1999), discusses adverse inference instructions for a court to give to a jury in a negative spoliation case. It does not create a duty to preserve evidence, as suggested by the plaintiffs. Instead, it creates a duty to preserve evidence only for a "party who reasonably anticipates litigation." Id. Finally, the UTPA and W. Va. C.S.R. § 114-14-6, as discussed above, do not impose a duty to preserve evidence.

In this case, the defendant did not voluntarily assume the duty to preserve the evidence. The final method for imposition of a duty on the defendant is where the duty arises from a "special circumstance." As discussed earlier in this opinion, there are no facts in the record to support the proposition that the duty to preserve the evidence arose from a special circumstance. If a duty to preserve evidence existed, it would arise under the state rule addressing the duty to investigate. Further, imputing knowledge of design defects to the defendant does not create a special circumstance.

Because the plaintiffs have failed to establish the existence of any genuine issue of material fact and, as a matter of law, have failed to state a claim of negligent spoliation of evidence by a third party, the defendant's motion for summary judgment as to Count I must be granted.

C.  <u>Intentional Spoliation of Evidence</u>

In West Virginia, to establish a prima facie case of intentional spoliation of evidence by a third party, a plaintiff must prove the following elements:

> (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages.

Syl. Pt. 11, <u>Hannah v. Heeter</u>, 584 S.E.2d 560 (W. Va. 2003).

The plaintiffs allege that the defendant committed the tort of intentional spoliation of evidence by a third party when it authorized the destruction of the semi-tractor. The defendant argues that the plaintiffs have not shown a genuine issue of material fact: (1) that no pending or potential civil action existed at the time of the alleged intentional spoliation; (2) that the defendant did not have actual knowledge of any pending or potential civil action at the time of the alleged intentional spoliation; and (3) that the defendant did not intend to defeat any person's ability to prevail in a civil action at the time of the alleged intentional spoliation.

As mentioned in the prior section, this Court does not believe there was a pending or potential civil action at the time of the alleged spoliation. Further, even if there was one, the defendant

18

did not have actual knowledge of such a suit at the time of the alleged spoliation. Finally, there is nothing in the record to indicate that the defendants intended to defeat the plaintiffs' ability to prevail in a civil action at the time of the alleged spoliation. The plaintiffs contend that destroying the semi-tractor nine days after the accident shows intent to defeat the plaintiffs' ability to prevail in a suit. This Court does not agree. This element obviously requires more than a showing that the defendant intentionally destroyed evidence. Id. at 573. Insurance companies routinely process claims in a timely manner. The plaintiffs' allegations do not show an intention by the defendant to harm the plaintiffs' ability to prevail in litigation.

Because the plaintiffs have failed to establish the existence of any genuine issue of material fact and, as a matter of law, have failed to state a claim of intentional spoliation of evidence by a third party, the defendant's motion for summary judgment as to Count II must be granted.

## V. Conclusion

Based upon the foregoing discussion, the plaintiffs' motion to certify questions to the Supreme Court of Appeals of West Virginia is DENIED. The defendant's motion for summary judgment is GRANTED, and the defendant's motions in limine are DENIED AS MOOT. It is ORDERED that defendants John Does 1, 2, and 3 be DISMISSED WITHOUT PREJUDICE as defendants in this action. Accordingly, it is ORDERED

19

that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    December 14, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE
